IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| INTERCEPT, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>MICRO FOCUS (US), INC.,<br><br>    Defendant.<br><br>MICRO FOCUS (US), INC.,<br><br>    Counterclaim Plaintiff,<br><br>v.<br><br>INTERCEPT, INC., and FIDELITY NATIONAL INFORMATION SERVICES, INC.,<br><br>    Counterclaim Defendants. | Civil Action No. 3:08-CV-892-J-12 MCR |

**DEFENDANT AND COUNTERCLAIM PLAINTIFF MICRO FOCUS (US), INC.'S, OPPOSITION TO COUNTERCLAIM DEFENDANT FIDELITY NATIONAL INFORMATION SERVICES, INC.'S, MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT**

Counterclaimant Micro Focus (US), Inc. ("Micro Focus"), respectfully opposes Counterclaim Defendant Fidelity National Information Services, Inc.'s ("FNIS"), Motion to Dismiss Micro Focus's Amended Counterclaim. In support of its opposition, Micro Focus states as follows:

## INTRODUCTION

Before causing its subsidiary, InterCept, to initiate this declaratory judgment action, FNIS held itself out to Micro Focus as the effective licensee of the software licenses in dispute here. FNIS claimed to have bought and paid for the rights granted by those licenses. FNIS held (and holds) itself out to all as the entity marketing the "BancPac" software program, a product that incorporates MicroFocus's Net Express product in violation of the licenses at issue. FNIS publicly and in communications with Micro Focus proclaimed InterCept's employees and operations as its own. Now that it suits FNIS's immediate litigation interest (to get itself dismissed from this case), however, FNIS acts as if it has had nothing to do with the dispute and seeks to avoid liability by claiming that its completely dominated subsidiary, InterCept, is, contrary to all appearances, "separate" and independent. The short term tactics of FNIS's motion to dismiss disregard the allegations of Micro Focus's Amended Counterclaim as well as the relevant legal standards applicable to it.

FNIS presents three arguments why it should not be held liable for tortious interference with Micro Focus's business relations with InterCept. Each one fails:

*First,* FNIS argues that Micro Focus fails to state a claim for tortious interference because the alleged breaches of contract predate FNIS's acquisition of InterCept,

1

meaning FNIS did not cause them. But this argument plainly disregards Micro Focus's allegations of systematic breaches occurring *after* FNIS acquired InterCept.

***Second***, FNIS argues that Micro Focus's allegations are insufficient to establish that FNIS knew of InterCept's contracts with InterCept. But Micro Focus need not conclusively establish FNIS's knowledge to survive a motion to dismiss. Rather, all Micro Focus need do is to allege facts giving rise to a "plausible" inference that FNIS knew of the contracts; the allegations that FNIS learned of the contracts in conducting due diligence for its multi-million dollar acquisition of InterCept are more than sufficient in this regard. FNIS's argument that its due diligence did not, in fact, disclose InterCept's contracts with Micro Focus asks the Court to disregard the well-pleaded allegations of Micro Focus's Amended Counterclaim and draw inferences, contrary to those facts, *against* Micro Focus, which is contrary to law.

***Third***, arguing that FNIS was privileged to interfere with InterCept's contracts, FNIS improperly attempts to turn its own burden of pleading and proving the affirmative defense of "financial privilege" into Micro Focus's burden to anticipate and rebut FNIS's affirmative defenses. But Micro Focus has no such burden. The affirmative defense of privilege is, moreover, inapplicable where a party purposely causes a breach of contract, as FNIS did here. Were it otherwise, a parent company could cause its subsidiary's contracts to be breached with impunity any time that parent company found the subsidiary's contractual obligations financially unappealing, leaving the victim of the practice with no recourse against the true perpetrator.

***Finally***, FNIS argues that Micro Focus fails to state a claim for alter ego liability because Micro Focus fails to allege that FNIS engaged in improper conduct. This is wrong. FNIS ignores that its attempt to invoke InterCept's ostensible corporate separateness only when it became convenient to avoid its own liability itself constitutes improper conduct. This allegation is sufficient to state a claim for alter ego liability under the Florida law that FNIS claims applies to its misconduct.

## RELEVANT FACTUAL BACKGROUND

The instant dispute arises from InterCept and FNIS's unauthorized use of a Micro Focus software product called Net Express. Net Express is a collection of software tools for editing, compiling, and debugging computer applications written in the COBOL programming language. ¶ 12.[1] Net Express is used to develop, debug, and otherwise improve a software application written in COBOL to create a software program that can run on modern computer operating systems. *Id.* Every application program created with Net Express incorporates Micro Focus's proprietary software code. *Id.* To use Net Express to "develop" (or create) applications, a customer is required to purchase a development license from Micro Focus; in order actually to "deploy" an application incorporating Micro Focus's proprietary software in its business or to its customers, a customer is required to purchase another, separate license from Micro Focus, a "deployment" or "production" license. *Id.* A deployment or production license authorizes the customer to use, in a production environment, the proprietary software files called Application Server for Net Express (the "ASNE Components") embedded

---

[1] All "¶" cites refer to Micro Focus's Amended Counterclaim, filed March 4, 2009.

3

into the customer's software when the software is developed and improved using Net Express. *Id.*

InterCept purchased development licenses for Net Express version 3.0 ("v3.0") in 1999. ¶ 13. Those licenses were "named-user" licenses, meaning each could only be used by the specific person for whom it was purchased, and only in a development environment. *Id.* InterCept used these development licenses to edit, debug, enhance and compile InterCept's BancPac software. *Id.* These licenses were governed by License Agreement V3.0.02 ("3.0 License"), which provided that the end user had to pay for a production license to deploy Net Express. ¶ 14. Despite that restriction, InterCept improperly used the ASNE Components in violation of the contract. ¶ 45.

In 2003, InterCept upgraded to an improved version of Net Express called "v3.1.00 SP1." ¶ 16. The applicable license for this version of Net Express was License Agreement G1.0.05 ("the 3.1 SP1 License"). That license allows the end user to deploy Net Express-developed software upon payment of the applicable licenses fees, but expressly provides that the end user is authorized to use the software "solely for its own internal use and benefit." ¶ 17. If a customer wanted to distribute its Net Express-developed software to its own customers or third parties, it had to enter into a distribution agreement with Micro Focus. ¶ 17. InterCept did not enter into any such distribution agreement, and yet distributed its Net Express-developed software, BancPac, to external customers in violation of the 3.1 SP1 License. ¶¶ 24, 25, 38, 39.

In October 2003, InterCept purchased 32 licenses called "standard concurrent 10-user pack licenses" for Application Server for Net Express v.3.1.00 SP1. ¶ 18. These

were deployment licenses, which allowed for no more than ten users to access the software on a single computing machine at the same time. ¶ 20. InterCept, however, used the 32 standard concurrent 10-user pack licenses to provide data processing services to 324 different banks, with between 7,000 and 14,000 users, in a "Service Bureau" in Thomson, Georgia. ¶ 22. The Service Bureau thus processed external client data using the Net-Express developed software, BancPac, in violation of the express terms of the 3.1 SP1 license, which limited use of Net Express (1) to internal use and benefit, (2) prevented distribution without additional licensing, and (3) prohibited the use of the software for service bureau or like purposes. ¶ 22. Moreover, InterCept's use of Micro Focus's software in the Service Bureau has also far exceeded the scope of the licenses InterCept purchased, which allowed for a maximum of 32 machines with 10 concurrent users each. ¶¶ 23, 33-35. While the precise timing of the violations remains a subject of discovery, the Service Bureau is operating 36 machines when it has licenses for only 32, and, as noted above, has between 7,000 and 14,000 users, not 320.

FNIS acquired InterCept in November of 2004 and took over day-to-day operation and control of InterCept, including operation of the BancPac Service Bureau. ¶ 10. While conducting due diligence into this acquisition, FNIS became aware of InterCept's 3.0 and 3.1 Licenses with Micro Focus. ¶ 50; *see also* ¶ 10. Thereafter, FNIS's and InterCept's ownership, officers, directors, and personnel overlapped, and employees involved in what were formerly InterCept operations began holding themselves out as employees of FNIS. ¶¶ 68, 69. FNIS intentionally caused or forced InterCept to increase the scope of the operations of the Service Bureau in violation of the

3.1 License, caused or forced InterCept to distribute versions of Net-Express-improved BancPac to dozens of new external bank customers in violation of the 3.1 License, and caused or forced InterCept to use the ASNE components in violation of InterCept's licenses. ¶¶ 51-55.

## LEGAL STANDARD

"[A] motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case." *Law Offices of David J. Stern, P.A. v. SCOR Reinsurance Corp.*, 354 F.Supp.2d 1338, 1342 (S.D. Fla. 2005) (citing *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984)). "For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to the plaintiffs, consider the allegations of the complaint as true, and accept all reasonable inferences in favor of the plaintiffs." *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 527 F.Supp.2d 1355, 1362 (M.D. Fla. 2007) (citations omitted). "To warrant dismissal . . . under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *BP Prods. N. Am., Inc. v. Giant Oil, Inc.*, 545 F.Supp.2d 1257, 1259 (M.D. Fla. 2008). "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low." *Id.*

## ARGUMENT

I.  **Micro Focus States a Claim for Tortious Interference.**

"Under Florida law, the elements of tortious interference are: (1) the existence of a business relationship . . .; (2) that the defendant knew of the relationship; (3) the

defendant intentionally and unjustifiably interfered with the relationship; and (4) damage to the plaintiff as a result of the breach of the relationship." *Bray*, 527 F.Supp.2d at 1367 (citing *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1994)).[2] Micro Focus alleges each of these elements. For the reasons addressed below, each of FNIS's arguments to the contrary fails, and FNIS's motion to dismiss Micro Focus's claim for tortious interference should be denied.

### A. Micro Focus Adequately Pleads That FNIS's Interference Caused InterCept's Breach of the 3.0 and 3.1 SP1 Contracts.

FNIS misconstrues Micro Focus's Amended Counterclaim by arguing that any breach of the 3.0 or 3.1 SP1 contract occurred prior to FNIS's acquisition of InterCept in 2004. In fact, Micro Focus's allegations regarding these breaches allege repeated and egregious violations *after* FNIS's acquisition of InterCept.

First, with regard to the 3.0 License, Micro Focus alleges that this contract applied to InterCept's 1999 purchases of Net Express v3.0, and that Micro Focus violated its terms when it used the ASNE Components without paying the required additional license fees. ¶¶ 14, 55. While some violations undoubtedly occurred before FNIS acquired InterCept, the violations for which FNIS is liable are those that post-date FNIS's acquisition of InterCept. There is no allegation that *all* of the breaches of the 3.0 License

---

[2] Micro Focus believes that a determination as to the applicable choice of substantive law is premature. FNIS cites the parties' principal places of business in Florida to determine that Florida law applies, but that analysis is incomplete. Further discovery is required to determine where the allegedly tortious conduct occurred. *Calixto v. BASF Construction Chemicals, LLC*, No. 01-60077-CIV, 2008 WL 2490454 (S.D. Fla. 2008) (denying motion to determine applicable law in tortious interference case where record lacked facts sufficient to make determination of law with most significant relationship to the case). For purposes of resolving this motion, Micro Focus addresses FNIS's arguments under the Florida law FNIS claims applies.

occurred prior to 2004, or that the violations ceased either when InterCept upgraded to v3.1 or when FNIS acquired InterCept. Therefore, FNIS's chronological argument fails.

Second, with regard to the 3.1 SP1 License, FNIS assumes that the only breach of contract was InterCept's initial act of establishing the Service Bureau, but Micro Focus alleges that FNIS caused InterCept impermissibly to expand the scope of its Service Bureau in violation of the 3.1 SP1 contract, and impermissibly to distribute its "Improved BancPac Software" in violation of the 3.1 SP1 contract, ***both of which occurred after FNIS acquired InterCept***. Amended Counterclaim ¶¶ 51-55. More specifically, Micro Focus alleges that "FNIS intentionally caused or forced InterCept to increase the number of machines on which it was running Application Server for Net Express in the unlicensed Service Bureau from 32 to 36 machines, in violation of the 3.1 SP1 contract," that "FNIS intentionally caused or forced InterCept to add new customers to the customer base of the Service Bureau *after it took over its operation*, causing or forcing InterCept to operate the Service Bureau on a scale that increasingly exceeded the scope of the licenses InterCept had purchased," and that "FNIS intentionally caused or forced InterCept to distribute versions of the improved BancPac Software that used Net Express Version 3.1.00 SP1 to External Bank Customers in violation of the provisions of the 3.1 SP1 Contract that restrict the licensee solely to internal use of the Net Express software and that require the purchase of a separate distribution license prior to the distribution of the Improved BancPac Software to third parties." ¶¶ 51, 52, 54. In short, FNIS misreads Micro Focus's allegations and crafts an argument devoid of any basis in the only facts properly subject to the Court's consideration — those alleged in the Amended

Counterclaim. *See Bray*, 527 F.Supp.2d at 1362 ("For the purposes of a motion to dismiss . . . the Court must limit its consideration to the complaint and written instruments attached as exhibits.").

FNIS's arguments all rest on contentions of fact that are not suitable for resolution as a matter of law on a motion to dismiss. Accordingly, it is no surprise that *all* of the cases FNIS relies upon are distinguishable on the basis of their procedural posture — none was decided on a motion to dismiss. *Farah v. Canada*, 740 So.2d 560 (Fla. 5th DCA 1999) (reversing jury verdict for plaintiff because record did not contain any evidence that defendant caused plaintiff to breach contract); *Tietig v. Se. Reg'l Constr. Corp.*, 557 So.2d 98, 99 (Fla. 3d DCA 1990) (reversing jury verdict for plaintiffs because "[i]t was affirmatively and conclusively demonstrated that Tietig's demands were not the legal nor direct cause of the alleged failure of the agreement between Southeast and its contracting party."); *Fort Lauderdale Riverwalk Properties, Inc. v. White*, 531 So.2d 739 (Fla. 4th DCA 1988) (reversing judgment for plaintiff after trial where there was no evidence that defendant prevented or interfered with plaintiff's exercise or renewal of option); *Chicago Title Ins. Co v. Alday-Donalson Title Co.*, 832 So.2d 810 (Fla. 2d DCA 2002) (affirming summary judgment because plaintiff raised no issue of material fact as to whether defendant intended to cause breach of relevant contracts).

And indeed, courts applying Florida law are reluctant to dismiss claims for tortious interference on motions to dismiss due to their fact-intensive nature. *See, e.g., Bray*, 527 F.Supp.2d 1355 (denying motion to dismiss tortious interference claim because plaintiff adequately alleged elements and defendants' factual and logical arguments were

9

irrelevant for purposes of motion to dismiss); *Stewart Title Guar. Co. v. Title Dynamics, Inc.*, No. 2:04CV316FTM33SPC, 2005 WL 2548419, at *4 (M.D. Fla. Oct. 11, 2005) (denying motion to dismiss tortious interference counterclaim, recognizing that the purpose of notice pleading "is to give notice rather than provide the exact details that will ensue at trial."); *Sobi v. Fairfield Resorts, Inc.*, 846 So.2d 1204 (Fla. 5th DCA 2003) (reversing dismissal for failure to state a claim because complaint adequately alleged elements of tortious interference and court improperly looked beyond complaint).

In summary, FNIS's factual arguments on causation are premature and contrary to the facts alleged in the Amended Counterclaim and the inferences reasonably drawn from those facts.

### B. Micro Focus Adequately Pleads That FNIS Knew of the Contracts at Issue.

Micro Focus also expressly alleges that "FNIS knew of the existence of [the 3.0 and 3.1 SP1] licenses." ¶ 50. Micro Focus alleges that "[o]n information and belief, FNIS conducted due diligence of InterCept prior to acquiring the company and learned of its contracts and licenses, including the 3.0 Contract and the 3.1 SP1 Contract." *Id.* And, Micro Focus alleges that "[a]fter FNIS acquired control of InterCept . . . FNIS apparently took over day-to-day operation and control of InterCept, including operation of the BancPac Service Bureau." ¶ 10. These allegations clearly and inarguably support the reasonable inference that FNIS, a sophisticated "technology services company" making a multi-million dollar acquisition, became aware during due diligence or immediately thereafter of the fundamental technology and concomitant intellectual property licenses underlying InterCept's operations. FNIS offers only hyperbolic rhetoric in response,

10

contending that Micro Focus's allegations of its knowledge "def[y] the scope of reason" and are "simply not supported by facts sufficient to render the assertion plausible." These contentions lack legal support, ignore the facts that are alleged in Micro Focus's Amended Counterclaim, and ask the Court to disregard that Micro Focus is entitled to all reasonable inferences in its favor. *Bray*, 527 F.Supp.2d at 1362.

Conspicuously absent from FNIS's brief is any authority for the proposition that pleading a defendant's knowledge on information and belief is somehow inadequate to survive a motion to dismiss. On the contrary, Micro Focus's information and belief allegation is sufficient — before discovery, only FNIS knows for a fact what FNIS knew. Moreover, Micro Focus's supporting factual allegations provide more than "plausible grounds to infer" that FNIS knew of InterCept's contracts with Micro Focus before it interfered with them. *See Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *see also* 5 Fed. Prac. & Proc. Civ. 3d § 1224 (2008) ("Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff but he has sufficient data to justify interposing an allegation on the subject."). Neither of the two cases cited by FNIS saves its argument, because neither case addressed the burden of pleading a defendant's knowledge or dismissed a plaintiff's claims for failure to do so adequately.[3]

---

[3] *See Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007) (reversing dismissal of First Amendment claim and recognizing that "the rule 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.") (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *316, Inc. v. Maryland Cas. Co.*, No. 3:07-cv-528-RD-MD, 2008 WL 2157084 (N.D. Fla. 2008) (dismissing punitive damages claim because plaintiff's allegations did not

FNIS also argues, in an apparent attempt to rebut any inference of its own knowledge, that "FNIS is a publicly traded technology services company that services more than 13,000 financial institutions in more than 80 countries worldwide." Mot. at 11. These facts appear nowhere in Micro Focus's Amended Counterclaim and accordingly may not be considered on this motion. *Bray*, 527 F.Supp.2d at 1362 ("the Court must limit its consideration to the complaint and written instruments attached as exhibits"). But even if these facts were properly before the Court, it is FNIS that seeks to draw an irrational inference from them. It is incredible for FNIS to suggest that simply because it is large and its operations are far flung it is necessarily careless and ignorant. Quite the reverse: it is reasonable to infer that a company as large, successful, and sophisticated as FNIS would be *quite* diligent in vetting its acquisitions before committing millions of dollars to them, and in closely monitoring their investment's operations thereafter, not less. FNIS is free to argue to the jury that it was too big and too busy to inform itself of InterCept's contracts, but for purposes of this motion, the Court "accept[s] all reasonable inferences in favor of [Micro Focus]." *Id.* FNIS's bald request that the Court do exactly the opposite and infer FNIS's ignorance from its size is misplaced and an invitation to error.

In summary, to assume FNIS's ignorance of InterCept's contracts with Micro Focus would be to assume that a highly sophisticated technological business entity acquired and subsequently ran a business without bothering to learn how the technology

---

    plead facts showing violations "with such frequency as to indicate a general business practice" as required to meet standard).

worked or what legal obligations came with the intellectual property it purchased. To dismiss Micro Focus's claims on the basis of these assumptions would require the Court inappropriately to draw inferences against Micro Focus on the basis of "facts" not alleged in its Counterclaim.

### C. FNIS's Defense of Privilege is Premature and Meritless.

FNIS also asks this Court to dismiss Micro Focus's counterclaim on the basis of its affirmative defense of privilege. But this affirmative defense may not be resolved on a motion to dismiss. The determination of whether such a privilege exists is properly left to the trier of fact. *See, e.g., Law Offices of David J. Stern, P.A. v. SCOR Reinsurance Corp.*, 354 F.Supp.2d 1338, 1346 (S.D. Fla. 2005) ("[t]he question of whether certain conduct is privileged, however, is a factual question to be determined by a jury. It is not appropriate for the Court to make this factual determination."); *Monco Enters., Inc. v. Ziebart Corp.*, 673 So.2d 491, 492 (Fla. 1st DCA 1996) ("[A]ny assertion of privilege by [defendant] should be pleaded and proven. The question of whether an action is privileged is a jury question."). It is not incumbent on Micro Focus to anticipate this defense and plead facts refuting it. *See Ventrassist Pty Ltd. v. Heartware, Inc.*, 377 F.Supp.2d 1278, 1286 (S.D. Fla. 2005) ("[I]t is well settled that plaintiffs are not required to negate an affirmative defense in their complaints.") (citations and quotations omitted). And of course, FNIS does not cite a single case in which a court granted a 12(b)(6) motion to dismiss based upon an assertion of the affirmative defense of privilege.

Regardless, even if the issue of privilege could be decided as a matter of law at this stage in the litigation, which it clearly cannot, the "financial interest" privilege does

not allow a party to purposefully cause a breach of contract, which is exactly what Micro Focus has alleged FNIS did. *Yoder v. Shell Oil Co.*, 405 So.2d 743 (Fla. 2d DCA 1981) (reversing because jury instruction overstated the financial interest necessary to justify interference and did not include the limitation that privilege does not include breach of contract); *see also McCurdy v. Collis*, 508 So.2d 380, 384 (Fla. 1st DCA 1987) ("In those circumstances in which there is a qualified privilege to interfere with a business relationship, the privilege carries with it the obligation to employ means that are not improper. In other words, the privilege does not encompass the purposeful causing of a breach of contract."). FNIS's attempt to argue the defense of privilege is neither procedurally appropriate nor factually well founded and, accordingly, should be rejected.

## II.   Micro Focus Properly Alleges FNIS Is Liable As InterCept's Alter Ego.

Now that the parties are embroiled in this litigation, FNIS moves to dismiss the claims against it on the argument that its subsidiary, InterCept, is a separate legal entity of which it apparently knows little or nothing, and over which it exercises no control. These claims are belied by admissions of FNIS's *General Counsel*, Ron Cook, *prior* to commencement of the litigation. In a letter sent to Micro Focus on August 29, 2008 (in which he refers to FNIS as FIS), Mr. Cook states that "*FIS* utilizes the Net Express software in connection with *its* license of BancPac software, as well as an ASP service [*i.e.*, the Service Bureau]." Ex. 4 to Amended Counterclaim (emphasis added). He states that "*FIS* fully paid for" the Net Express developer licenses first used in conjunction with BancPac, as well as the 32 10-Pack Licenses purchased in October 2003, making no mention of InterCept despite the fact that these licenses pre-date FNIS' 2004 acquisition

of the company. *Id.* (emphasis added). He asserts that Micro Focus's licenses granted to "*FIS*" the various rights to use, reproduce and distribute Net Express in dispute here, again making no mention of InterCept. *Id.* (emphasis added). A month later, however, Mr. Cook caused a Complaint seeking a declaratory judgment to be filed on behalf of InterCept, not FNIS.

Micro Focus alleges sufficient facts to support its alter ego claim, and FNIS indeed does not dispute the adequacy of Micro Focus's allegations to support an inference that InterCept has no true separate and independent existence and that InterCept is a mere instrumentality of FNIS. *See* Mot. at 14-16.[4] Indeed, FNIS's *only* challenge to Micro Focus's alter ego claim is its argument that Micro Focus failed to allege that FNIS used InterCept for an improper purpose.[5] But Micro Focus *does* allege that FNIS used InterCept for an improper purpose, and that improper purpose is in fact betrayed by FNIS's attempt to extricate itself from this dispute with this motion to dismiss: FNIS's holding itself out as the entity with the rights to use the Net Express software, and as the entity responsible for Net Express licensing, payment, and use, followed by the assertion

---

[4] If the court thinks it is necessary, Micro Focus will amend its counterclaim to add further detail of FNIS's control of the BancPac operations that FNIS claims are operated by InterCept. In addition to publicly available information indicating such control, such as FNIS's website, Micro Focus expects to learn additional facts on this issue from its pending discovery relevant to the corporate relationship between FNIS and InterCept.

[5] FNIS argues in footnote 10 that "Micro Focus's alter ego claim is inconsistent with and undermines its claim of tortious interference" and that Micro Focus "cannot have it both ways." This argument is directly rejected by the text of the Federal Rules. Federal Rule of Civil Procedure 8(d)(3) expressly provides that "[a] party may state as many claims or defenses as it has, regardless of consistency." In any event, Micro Focus's theories are not necessarily inconsistent, and any lack of clarity in the facts alleged regarding the relationship between InterCept and FNIS is because of Micro Focus's inability to conduct discovery (yet) into that relationship and the opaque language FNIS has used to describe it.

of corporate separateness for purposes of avoiding liability in litigation, constitutes improper conduct sufficient to withstand this motion to dismiss. ¶¶ 71, 73.

A corporate defendant's tactical assertion of corporate separateness to avoid liability constitutes 'improper conduct' sufficient to support a finding of alter ego liability and thus to withstand a motion to dismiss the claim as a matter of law. *SEB S.A. v. Sunbeam Corp.*, 148 F.App'x. 774, 800 (11th Cir. 2005).[6] Sunbeam was a defendant in a patent infringement claim, and brought cross-claims for indemnification against a manufacturer with which it had a contractual relationship, as well as that company's parent, Global Tech. Global Tech moved for judgment as a matter of law at the close of Sunbeam's case, arguing that Sunbeam had not established that it should be held directly liable, and the district court denied that motion. On appeal, the Eleventh Circuit recognized that "Florida law allows a party to pierce the corporate veil . . . if it can demonstrate first, that the subsidiary was a mere instrumentality of the parent, and second, that the parent engaged in improper conduct through its organization or use of the subsidiary." *Id.* at 800 (citing *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998) (citing *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1117-21 (Fla. 1984)). Global Tech, like FNIS here, argued that there was no evidence of improper conduct. *Id.* The Court recognized that Global Tech had

---

[6] As FNIS acknowledges, the choice of law determination for alter ego is unclear, and some courts look to the state of incorporation of the entity to be disregarded, which in this case would be Georgia. The court need not resolve this choice-of-law issue for purposes of this motion to dismiss because Micro Focus's allegations are sufficient under either state's law. *See Najran Co. for General Contracting and Trading v. Fleetwood Enters., Inc.*, 659 F.Supp. 1081 (S.D. Ga. 1986) (piercing veil where corporation profited from contract of subsidiaries and publicity therefrom but then hid behind corporate separateness for purposes of litigation).

previously represented that **it** had the relevant contractual and business relationship with Sunbeam, and only "assert[ed] its corporate status in th[e] action to avoid liability." *Id.* The Court held this to be improper conduct sufficient to warrant denial of the judgment as a matter of law.

In *Sunbeam*, Global Tech tried to do exactly what FNIS is trying to do here. Here, as in *Sunbeam*, FNIS held itself out as being responsible for the licensing, payment, and use of Net Express products, and only later asserted its corporate separateness to avoid liability in the face of Micro Focus's counterclaim. Micro Focus sufficiently alleges improper conduct by alleging that FNIS has trotted out and is hiding behind InterCept's "separate" corporate status for this improper purpose. ¶¶ 70-74; *Sunbeam*, 148 F.App'x. at 800 (11th Cir. 2005). It follows that Micro Focus, like Sunbeam, should be able to proceed with its claim of alter ego against FNIS.

## CONCLUSION

For the foregoing reasons, Micro Focus respectfully requests that FNIS's motion to dismiss Micro Focus's counterclaim should be denied in its entirety.

DATED: April 10, 2009          Respectfully submitted,

BEDELL, DITTMAR, DEVAULT,
PILLANS & COXE, P.A.

By: s/ *John A. DeVault*
    John A. DeVault, III
    Florida Bar No. 103979
    Amanda Eaton Ferrelle
    Florida Bar No. 0913251
    The Bedell Building
    101 East Adams Street
    Jacksonville, Florida 32202
    Telephone: (904) 353-0211
    Facsimile: (904) 353-9307
    jad@bedellfirm.com
    aef@bedellfirm.com

        and

James A. Lico (*pro hac vice*)
Trial Counsel
Traci L. Shafroth (*pro hac vice*)
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
jlico@kirkland.com
tshafroth@kirkland.com

Counsel for Defendant and Counterclaim Plaintiff Micro Focus (US), Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of April, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

William E. Adams, Jr.
badams@gunster.com

David M. Wells
dwells@gunster.com

*s/ John A. DeVault, III*
John A. DeVault, III
Florida Bar No. 103979
E-mail: jad@bedellfirm.com
The Bedell Building
101 East Adams Street
Jacksonville, Florida 32202
Telephone: (904) 353-0211
Facsimile: (904) 353-9307